WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Million,<br><br>        Plaintiff,<br><br>v.<br><br>Pindernation Holdings LLC, et al.,<br><br>        Defendants. | No. CV-23-00072-PHX-MTL<br><br>**ORDER** |

Plaintiff Robert Million moves for default judgment against Defendants Pindernation Holdings LLC and Lord Pindernation (a.k.a Michael Pinder) (collectively "Pindernation"), pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. (Doc. 10.) For the following reasons, the motion for default judgment will be granted and Million will be awarded $6,300 plus post-judgment interest.[1]

**I.     BACKGROUND**

As the Clerk of Court has entered default, the Court takes the Complaint's factual allegations as true. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.").

The Complaint alleges claims of failure to pay overtime and failure to pay minimum wage in violation of the Fair Labor Standards Act ("FLSA"), failure to pay minimum wage in violation of the Arizona Minimum Wage Act ("AMWA"), and failure to pay wages due

---

[1] Dahlia Styles, a second-year law student at the Sandra Day O'Connor College of Law at Arizona State University, assisted in drafting this Order.

and owing in violation of the Arizona Wage Act ("AWA"). (Doc. 1 ¶¶ 60-80.)

In April 2022, Million began working for Pindernation Electric as a heavy equipment operator. (*Id.* ¶¶ 28-30.) Pindernation agreed to pay Million $28 per hour on a weekly basis. (*Id.* ¶¶ 31-32.) Classified by Pindernation as a W-2 employee, Million was a non-exempt employee. (*Id.* ¶¶ 42, 53.) From December 4, 2022, through December 10, 2022, ("Workweek 1"), Million worked approximately 40 hours. (*Id.* ¶ 33.) He then received a check for Workweek 1. (*Id.* ¶ 36.) One month before this, Million worked approximately 8 hours of overtime that went unpaid. (*Id.* ¶ 34.) Following the week of December 11, 2022, to December 17, 2022, ("Workweek 2"), Million received a check that included 32 hours of paid time off, and the previously unpaid eight hours of overtime. (*Id.* ¶ 35.)[2]

When Million attempted to receive the money from his Workweek 1 and 2 checks, both were returned for nonsufficient funds. (*Id.* ¶¶ 35-36.) Million contacted Pindernation regarding the checks and they told him to come to their office to receive replacement checks. (*Id.* ¶¶ 37-38.) Upon arrival, an employee of Pindernation took Million's checks, and then informed him that there were never any replacement checks drafted. (*Id.* ¶ 39.) To date, Pindernation has not reimbursed Million, or taken any other corrective action, for the nonsufficient checks. (*Id.* ¶¶ 40, 44.) Million filed a lawsuit asserting two violations of the FLSA, one violation of the AMWA, and one violation of the AWA. (*Id.* ¶¶ 60-80.) Million seeks monetary damages for the Workweek 1 and Workweek 2 missing wages, federal and state liquidated damages, as well as attorneys' fees and costs. (Doc. 10 at 7-10.) In total, excluding attorneys' fees and costs and post-judgment augmentation, Million is requesting $6,300. (*Id.* at 11.) Million requests that damages be augmented further by post-judgment interest pursuant to 28 U.S.C. § 1961. (*Id.*)

Despite being served with the Complaint and Summons (Docs. 5, 6), Pindernation failed to file an answer, otherwise respond to the Complaint, or file a notice of appearance.

---

[2] While Million's Motion for Entry of Default Judgment states that his paycheck included 27 hours of paid time off (Doc. 10 at 5), his Complaint alleges that Million received a paycheck that included 32 hours of paid time off (Doc. 1 ¶ 35). As the Court takes the Complaint's factual allegations as true, the 32 hour figure is used.

Million's application for default against Pindernation (Doc. 8) was entered by the Clerk of Court on February 13, 2023. (Doc. 9.) Thereafter, on February 17, 2023, Million filed the instant motion. (Doc. 10). Pindernation has failed to respond.

## II.     DISCUSSION

### A.     Jurisdiction, Venue, and Service

"When entry of default is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *Tuli v. Republic of Iraq*, 172 F.3d 707, 712 (9th Cir. 1999). Million asserts claims arising under the FLSA, the AMWA, and the AWA. (Doc. 1 ¶¶ 1-4.) The district courts of the United States have subject matter jurisdiction over claims arising out of federal law, including the FLSA, under 28 U.S.C. § 1331. Million's state law claims, under both the AMWA and the AWA, form "part of the same case or controversy under Article III of the United States Constitution" as his FLSA claim. 28 U.S.C. § 1367. (*Id.* ¶ 5.) Thus, the Court has supplemental jurisdiction over Million's state law claims. Million asserts that venue and personal jurisdiction requirements are satisfied because Pindernation "regularly conduct business in and have engaged in the wrongful conduct . . . in . . . this judicial district." (*Id.* ¶ 6.) Therefore, "a substantial part of the events or omissions giving rise to the claim" occurred in this district and venue is proper. 28 U.S.C. § 1391(b)(2). Additionally, the Court finds it has personal jurisdiction over the parties. Pindernation Holdings LLC regularly conducts business in the District of Arizona, owns offices in the district, and maintains business agents within the state. (*Id.* ¶ 6-8.) Similarly, Michael Pinder is domiciled within the District of Arizona. (Doc. 1-1 at 1.) Accordingly, the Court has jurisdiction over the parties.

Service is properly executed by delivering a copy of the summons and of the complaint to the individual personally. Fed. R. Civ. P. 4(e)(2)(A); Ariz. R. Civ. P. 4.1(d). In the current case, the summons and a copy of the Complaint were personally served on Michael Pinder on January 18, 2023. (Doc. 6.) For a corporation, service can be executed by serving a copy of the summons and the complaint on a statutory agent. Fed. R. Civ. P.

4(h)(1); Ariz. R. Civ. P. 4.1(i). Michael Pinder is a registered statutory agent for Pindernation Holdings LLC (Doc. 10 at 12) and was served on behalf of the corporation on January 18, 2023. (Doc. 5.) Accordingly, both Michael Pinder and Pindernation Holdings LLC were properly served.

### B. Default Judgment

Once a default is entered, the district court has discretion to grant default judgment. *See* Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Brooke v. Sai Ashish Inc.*, No. 1:21-CV-00967-AWI-SAB, 2021 WL 4804220, at *5 (E.D. Cal. Oct. 14, 2021) (explaining that default judgment "is a two-step process: an entry of default judgment must be preceded by an entry of default").

The following factors are to be considered when deciding whether default judgment is appropriate:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of the claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring a decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986); *New Gen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016). As the party seeking default judgment, Million "bears the burden of demonstrating to the Court that the complaint is sufficient on its face and that the *Eitel* factors weigh in favor of granting default judgment." *Ronald Norris v. Shenzhen IVPS Tech. Co.*, No. CV-20-01212-PHX-DWL, 2021 WL 4844116, at *2 (D. Ariz. Oct. 18, 2021). Million also bears the burden of proving all damages. *Philip Morris USA, INC. v. Castworld Prod., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003).

#### 1. The first, fifth, sixth, and seventh *Eitel* factors

Pindernation has yet to respond or participate in this litigation. Traditionally, this means the "first, fifth, sixth, and seventh [*Eitel*] factors are easily addressed." *Zekelman Indus. Inc. v. Marker*, No. CV-19-02109-PHX-DWL, 2020 WL 1495210, at *3 (D. Ariz. Mar. 27, 2020) (noting that the first, fifth, and sixth *Eitel* factors supported granting default

judgment because a denial would prejudice the plaintiff, there was no dispute over material facts, and the default was not due to excusable neglect). The first factor weighs in favor of default judgment because denying Million's motion will leave him "without other recourse for recovery" due to Pindernation's failure to appear in the suit. *PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). The fifth factor also weighs in favor of default judgment because "all well-pleaded facts in the complaint are taken as true . . . no genuine dispute of material facts would preclude granting" the motion for default judgment. *Id.* Additionally, the sixth factor tips in favor of entering default judgment because Pindernation was properly served. (Docs. 5, 6.) Where a defendant is served properly, it is unlikely that their failure to answer is a result of excusable neglect. *See Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1072 (D. Ariz. 2006). Finally, although the seventh factor, which considers the policy favoring a decision on the merits, generally weighs against default judgment, the existence of Rule 55(b) "indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177. This factor alone is not sufficient to preclude the entry of default judgment in this case.

### 2. The second and third *Eitel* factors

The second and third *Eitel* factors—the merits of the claim and the sufficiency of the complaint—are often "analyzed together and require courts to consider whether a plaintiff has stated a claim on which [he] may recover." *Vietnam Reform Party v. Viet Tan-Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019). Before turning to whether Million has stated a claim on which he may recover, the Court must analyze the status of Million as an employee within the meaning of the FLSA, the AMWA, and the AWA.

#### i. FLSA claims

The FLSA defines an "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). It defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." *Id.* § 203(d). The Court finds Pindernation's classification of Million as a W-2 employee to be strong evidence that he

was an employee. (Doc. 1 ¶ 42.) As for Pindernation, it is an enterprise doing business in Maricopa County, Arizona, that directed and exercised control over Million's work and wages at all relevant times. (*Id.* ¶ 56.) These facts are evidence that Pindernation was an employer. For these reasons, the Court finds that Pindernation is an employer and Million was an employee of Pindernation under the FLSA.

### ii.     AMWA claims

The AMWA, like the FLSA, defines an "employee" as "any person who is or was employed by an employer." A.R.S. § 23-362(A). It, however, defines an "employer" as "any corporation proprietorship, partnership, joint venture, limited liability company, trust, association, political subdivision of the state, [and] individual or other entity acting directly or indirectly in the interest of an employer in relation to an employee." A.R.S. § 23-362(B). As the AMWA shares the same definition of employee as the FLSA, the Court's reasoning as to Million's employee status under the FLSA applies with equal force here. Pindernation is also an employer because it is an enterprise operating in Maricopa County, Arizona that controlled Million's work and wages at all relevant times. (*Id.* ¶¶ 28-29, 56.) As a result, the Court finds that Pindernation is an employer and Million was an employee of Pindernation under the AMWA.

### iii.     AWA claims

Like the FLSA and the AMWA, the AWA defines an "employee" as "any person who performs services for an employer under a contract of employment either made in this state or to be performed wholly or partly within this state." A.R.S. § 23-350(2). But the AWA defines "employer" as "any individual, partnership, association, joint stock company, trust or corporation, the administrator or executor of the estate of a deceased individual or the receiver, trustee or successor of any of such persons employing any person." A.R.S. § 23-350(3). Again, the Court finds that Million's classification as a W-2 employee by Pindernation supports a finding that he was an employee under the AWA. (*Id.* ¶ 32.) Additionally, Pindernation "own and/or operate as Pindernation Electric, an enterprise doing business in Maricopa County, Arizona." (*Id.* ¶ 28.) Million alleges that

while working for Pindernation he resided in Maricopa County, Arizona. (*Id.* ¶ 7.) For these reasons, Pindernation is an employer and Million is an employee under the AWA.

### iv. Summary

For the foregoing reasons, the Court finds that Million is an employee under the FLSA, the AMWA, and the AWA. 29 U.S.C. § 203(e)(1); A.R.S. § 23-362(A); A.R.S. § 23-350(2). In his Complaint, Million argues that he is entitled to statutorily guaranteed unpaid and overtime wages, as well as unpaid minimum wages. (*Id.* ¶ 60-80.) Because the Court takes these allegations as true, *NewGen*, 840. F.3d at 617, Million "has stated a claim on which [he] may recover." *Vietnam Reform Party*, 416 F. Supp. 3d at 962. Therefore, the second and third *Eitel* factors favor the entry of default judgment.

### 3. The fourth *Eitel* factor

Under the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of the defendants' conduct. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1176. If the sum of money at stake is completely disproportionate or inappropriate, default judgment is disfavored. *See Streeter*, 438 F. Supp. 2d at 1071. In contrast to a complaint's other allegations, allegations pertaining to damages are not taken as true when considering a motion for default judgment. *See Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). And a district court has "wide latitude" in determining the amount of damages to award upon default judgment. *Burrell v. Berntsen*, No. CV-21-00011-PHX-ESW, 2021 WL 8086347, at *2 (D. Ariz. July 2, 2021), report and recommendation adopted, No. CV-21-00011-PHX-ESW, 2021 WL 8086345 (D. Ariz. July 26, 2021) (citing *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993)).

Here, Million seeks the unpaid minimum and overtime wages he is owed under the FLSA, the AMWA, and the AWA along with liquidated damages. Million is requesting $6,300 plus post-judgment interest pursuant to 28 U.S.C. § 1961, and attorneys' fees and costs. (Doc. 10 at 11.) For the claims listed in the Complaint, the Court finds that the amount requested is reasonable. Accordingly, the fourth *Eitel* factor favors the entry of default judgment.

### 4. Summary

After reviewing Million's motion and the Complaint, and analyzing the *Eitel* factors, the Court finds that factors one through six weigh in favor of granting Million's motion. While the final factor weighs against entering default judgment, it is insufficient to outweigh the other factors. As a result, the Court concludes that Million is entitled to default judgment.

### C. Damages

Having found that entry of default judgment is proper, the only remaining issue is one of damages. In contrast to the other allegations in a complaint, allegations pertaining to damages are not taken as true when considering a motion for default judgment. *Combs*, 285 F.3d at 906. Nonetheless, a district court has "wide latitude" in determining the amount of damages to award upon default judgment. *James*, 6 F.3d at 310.

Million requests entry of judgment against Pindernation Holdings LLC and Michael Pinder for a total amount of $6,300.[3] (*Id.*) This total amount consists of the unpaid wages totaling $1,876—trebled to $5,628 under A.R.S. § 23-355—and the unpaid federal overtime wages of $336—doubled to $672 under 29 U.S.C. § 216(b). (*Id.* at 9.) Of the total $6,300, Million requests that $2,208 be held against Pindernation Holdings LLC and Michael Pinder jointly and severally.[4] (*Id.*) The joint and several damages consist of the unpaid Arizona minimum wage of $512 that must be trebled under A.R.S. § 23-364(G) for a total of $1,536, and the amount of the doubled unpaid federal overtime damages of $672. (*Id.* at 8-9.) Million requests that the remaining $4,092 of the total amount be held only against Pindernation Holdings LLC. (*Id.* at 11.) Additionally, Million requests attorneys' fees and costs. (*Id.*) And finally he requests that the total amount be enhanced by post-judgment interest under 28 U.S.C. § 1961. (*Id.*)

Rule 54(c) of the Federal Rules of Civil Procedure requires that a default judgment

---

[3] The Court notes that Million's Motion for Default Judgment references 27 hours of paid time off despite the Complaint requesting 32 hours. The Court reconciles this inconsistency against Plaintiff and uses the 27-hour amount.
[4] Although Million's Motion requests $2,280, this appears to be a typo according to the Court's calculations.

"not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). The requested damages were listed in the Complaint (Doc 1 ¶¶ 60-80), and Million does not request damages "different in kind" or in excess of those requested in the Complaint. (*Id.*) Million also provided sufficient notice of the potential award through his Complaint, enabling Pindernation "to decide whether to respond to the complaint in the first instance." *Fisher Printing Inc. v. CRG LTD II LLC*, No. CV-16-03692-PHX-DJH, 2018 WL 603299, at *3 (D. Ariz. Jan. 22, 2018).

The Court may enter a default judgment without a damages hearing when, as here, "the amount claimed is a liquidated sum or capable of mathematical calculation." *HTS, Inc. v. Boley*, 954 F. Supp. 2d 927, 947 (D. Ariz. 2013) (quoting *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981)). In this case, the requested damages are capable of mathematical calculation as they are comprised of hours worked by Million, the amount in pay he was entitled to receive, and statutory multipliers. (*Id.* at 7-11.) The requested damages are also supported by Million's motion, the Declaration of Robert Million, and other attached exhibits. (Docs. 10, 10-1, 11-1.) *See Doe v. United States*, No. CV-17-01991-PHX-GMS (JZB), 2018 WL 2431774, at *8 (D. Ariz. May 30, 2018) ("In determining damages, a court can rely on declarations submitted by the plaintiff[.]") (citing *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal 2003)).

The Court finds that Million's motion, the Declaration of Robert Million, and other attached exhibits establish the damages Million has suffered. (Docs. 10, 10-1, 11-1.) Therefore, the Court will enter default judgment against Defendants Pindernation Holdings LLC and Michael Pinder in the amount of $6,300, with $2,208 being held jointly and severally against both parties, and the remaining $4,092 to be held against Pindernation Holdings LLC. Additionally, post-judgment interest will be added to this award. Should Million seek attorneys' fees and costs, he shall file his fee application with the Court

///

///

///

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** granting Robert Million's Motion for Entry of Default Judgment (Doc. 10).

**IT IS FURTHER ORDERED** awarding Robert Million $6,300 plus post-judgment interest at the applicable statutory rate against Defendants Pindernation Holdings LLC and Michael Pinder, with $2,208 of that amount to be held jointly and severally against both defendants and the remaining $4,092 to be held against Pindernation Holdings LLC.

**IT IS FINALLY ORDERED** directing the Clerk of the Court to close this case and to enter judgment accordingly.

Dated this 5th day of April, 2023.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge